IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

| | |
|---|---|
| CHERYL HILEMAN, ) | |
| ) | |
| Plaintiff, ) | 2:23-CV-01119-MJH |
| ) | |
| vs. ) | |
| ) | |
| WEST PENN ALLEGHENY HEALTH ) | |
| SYSTEM, INC., ) | |

Defendant,

**MEMORANDUM OPINION**

On June 19, 2023, Plaintiff, Cheryl Hileman, filed suit against Defendant, West Penn Allegheny Health System, Inc., ("WPAHS"). (ECF No. 1). Plaintiff alleged five counts. At Count I, Plaintiff alleged discrimination claims under the Americans with Disabilities Act. ("ADA"), 42 U.S.C. § 12101, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951-963. At Count II, Plaintiff alleged failure to accommodate claims under the ADA and PHRA. At Count III, Plaintiff alleged retaliation and wrongful termination claims under the ADA and PHRA. At Count IV, Plaintiff alleged an interference claim under the Family and Medical Leave Act of 1993, ("FMLA"), 29 U.S.C. § 2601. At Count V, Plaintiff alleges a claim under the Wage Payment Collection Law ("WPCL"), 43 Pa. Stat. Ann. § 260.1. On May 29, 2024, Defendant filed a Motion for Summary Judgment, accompanying brief, and Concise Statement of Material Facts. (ECF Nos. 48-50). On July 3, 2024, Plaintiff filed a Response in Opposition to Defendant's Motion for Summary Judgment, accompanying brief, and Counter Statement of Material Facts. (ECF Nos. 57-59). On July 17, 2024, Defendants filed their Reply.

1

(ECF No. 62). The issues are fully briefed and ready for disposition. For the reasons discussed below, Defendant's Motion for Summary Judgment will be granted in full.

I.      **Statement of Facts**

Plaintiff, Cheryl Hileman, was hired by WPAHS as a CT Technologist on March 1, 2021. (ECF No. 63, at 1). Ms. Hileman reported to Michael Lust, Manager, Radiology Operations, and worked at Forbes Hospital as an at-will employee. (*Id.*). On February 9, 2022, Ms. Hileman received a Disciplinary Action Form, because she had called off from work enough times to violate WPAHS' policies. (ECF No. 51-1, at Ex. 1). The Disciplinary Form contained instructions on inquiring about leave of absence under the FMLA or any accommodations under the ADA. (*Id.*). WAPHS' Standards of Conduct Policy lists examples of behaviors that violate company policies and could lead to termination, including "[s]leeping while on duty, or positioning oneself with the obvious intent of sleeping while on duty." (ECF No. 63, at 5). On July 2, 2022, Morgan Ashbaugh, another CT Technologist, emailed Mr. Lust reporting to him that she has observed Ms. Hileman "nodding off" on several occasions. (ECF No. 51-1, at WPAHS_000000234). Ms. Ashbaugh's email stated, "while working with [Ms. Hileman] I have noticed her nodding off multiple times in one shift. At times it looks like she's truly sleeping. I do not know for a fact though if she's truly sleeping or not; I do not have time to babysit and wake her up periodically." (*Id.*).

On July 13, 2022, Mr. Lust met with Ms. Hileman and informed her of the allegations that she had been sleeping at work. (ECF No. 63, at 11). Ms. Hileman denied that she had been sleeping and stated that she may have "shut [her] eyes," because they were dry due to a change in her diabetes medication. (ECF No. 51-2, at 156). This was the first time that Ms. Hileman had disclosed to Mr. Lust, or anyone at WPAHS, that she had diabetes. (ECF No 63, at 13). Mr. Lust

requested that Ms. Hileman write a statement explaining why her eyes were closed. On July 17, 2022, Ms. Hileman sent the statement, which read: "Recent diagnosis of diabetes, working diligently with md to adjust medication causing severe dry eyes & irritation frequently using lubricated eye drops to help and praying." (*Id.* at 16). After receiving Ms. Hileman's statement, Mr. Lust contacted Jessie Pfalzgraf, Senior Employee Relations Consultant, who concluded that Ms. Hileman's actions constituted grounds for termination. (ECF No. 51-5, at 273). On July 20, 2022, Ms. Hileman was terminated from her position at WPAHS by Mr. Lust. (ECF No. 63, at 19).

## II.     Relevant Legal Standard

According to Federal Rule of Civil Procedure 56, a court must grant summary judgment where the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a dispute to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (internal quotations omitted). Additionally, for a factual dispute to be material, it must have an effect upon the outcome of the suit. *Id.* In reviewing and evaluating the evidence to rule upon a motion for summary judgment, the court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the" non-moving party. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (internal quotations omitted). However, where "the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,'" the moving party is entitled to judgment as a matter of law. *Moody*, 870 F.3d at 213 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "Discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion. Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* at 256-57 (internal citation omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). Judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of the party." *Id.* at 251 (internal citation omitted).

### III. Discussion

A. Counts I and III: Discrimination and Retaliation Claims

At Counts I and III of the Complaint, Ms. Hileman brings ADA and PHRA discrimination and retaliation claims, alleging that WPAHS discriminated against her based upon her diabetes and retaliated against her for requesting an accommodation because of her diabetes. (ECF No. 1, at ¶¶ 56-68, 77-83).[1]

These claims are both analyzed under the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Gardner v. Ulta Salon Cosmetics & Fragrance Inc.,* 2024 WL 1110384 (3d Cir. 2024) (applying McDonnell Douglas in a

---

[1] In Ms. Hileman's Complaint, at Count III, she seems to assert a wrongful termination claim. Ms. Hileman does not brief such a claim in her Brief in Opposition. In footnote 5 of its Brief in Support, WPAHS argues that such a claim is preempted. The Court agrees with the argument presented by WPAHS and Ms. Hileman's wrongful termination claims will be dismissed.

disability discrimination case); *Shellenberger v. Summit Bancorp*, 318 F.3d 183, 187 (3d Cir. 2003) (applying *McDonnell Douglas* in a retaliation case). Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of discrimination. *Smith v. Allentown*, 589 F. 3d 684, 689-690 (3d Cir. 2009). If a plaintiff establishes a prima facie case, then the burden of production switches to the employer to identify a legitimate non-discriminatory reason for the adverse employment action. *Id.* If the employer establishes a legitimate non-discriminatory reason, the burden of production again switches to the plaintiff to show that the employer's legitimate non-discriminatory reason was pretextual. *Id.* The burden of persuasion always remains with the plaintiff. *Id.*

To establish a prima facie case of discrimination, Ms. Hileman must establish that (1) she is disabled within the meaning of the ADA, (2) she is otherwise qualified for the job, with or without reasonable accommodations, and (3) she was subjected to an adverse employment decision because of discrimination. *Drizos v. PNC Investments LLC*, 2023 WL 4986496 at *5-6 (3d Cir. 2023) (citing *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010)). To establish a prima facie case for retaliation, Ms. Hileman must establish "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action" *Jakomas v. City of Pittsburgh*, 342 F. Supp. 3d 632, 653 (W.D. Pa. 2018) (citing *EEOC v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015)). Although an employer is prohibited from discharging an employee based on a disability, an employer is not prohibited from discharging an employee based on misconduct, even if that misconduct is related to his disability. *Hoffman v. City of Bethlehem*, 739 Fed. Appx. 144, 149 (3d Cir. 2018).

<u>Prima Facie Case</u>

WPAHS argues that Ms. Hileman is unable to establish a prima facie case for discrimination or retaliation under the ADA, because she cannot establish a causal connection between her diabetes or an alleged protected activity and her termination. (ECF No. 49, at 7-8). Ms. Hileman argues that she has established that a causal connection exists between her diabetes and her termination. (ECF No. 58, at 10-17). Ms. Hileman further argues that she has established that a causal connection exists between her alleged protected activities and her termination. (*Id.*).

The Court will first address whether WPAHS discriminated against Ms. Hileman based upon her diabetes. On July 2, 2022, Ms. Ashbaugh sent Mr. Lust an email alleging that Ms. Hileman was observed to possibly be sleeping while working. (ECF No. 51-1, at WPAHS_000000234). Ms. Hileman testified that she may have "shut [her] eyes," but that she was not sleeping. (ECF No. 51-2, at 156). It is undisputed that, pursuant to WPAHS' policies, "[s]leeping while on duty, or positioning oneself with the obvious intent of sleeping while on duty" is a terminable offense. (ECF No. 63, at ¶ 7). WPAHS cited the allegation that Ms. Hileman was sleeping while working as their reason for terminating her. In Ms. Hileman's Brief in Opposition, Ms. Hileman points to various parts of the record, arguing that she had merely "shut [her] eyes," because they were dry due to her diabetes, and that once she disclosed her diagnosis to Mr. Lust at the July 13, 2022 meeting, WPAHS had an obligation to accommodate her.

Ms. Hileman points to various parts of the record and makes many arguments as to why she believes she was terminated because of her diabetes – none of which go to the merits of the case. The law is clear that Ms. Hileman must prove that she was terminated because of her disability not that her disability is the reason for or related to her misconduct. WPAHS was not informed that Ms. Hileman had diabetes until the July 13, 2022 meeting, which was after she

6

was alleged to have been sleeping. WPAHS had no legal obligation to excuse her misconduct just because it was related to her disability. *See Hoffman,* 739 Fed. Appx at 149. Ms. Hileman does not point to any record evidence to support that she was terminated because of her diabetes and not her misconduct, which occurred before WPAHS was even aware of her diabetes diagnosis. As such, Ms. Hileman fails to establish a genuine issue of material fact that she was terminated because of her diabetes.

As to Ms. Hileman's retaliation claim, she argues that the temporal proximity between WPAHS learning about her diabetes and her termination supports that her diabetes was a determinative factor in her termination. (ECF No. 58, at 16). In her Brief in Opposition, Ms. Hileman asserts that she engaged in three protected activities: (1) during the July 13, 2022 meeting when she first disclosed her diabetes diagnosis to Mr. Lust; (2) when she stated in her July 17, 2022 written statement that she was "praying" and working with her physician to adjust her diabetes medication; and (3) when she asked "if there was anything that could be done" after being terminated on July 20, 2022. (*Id.* at 17).

To establish a causal connection through temporal proximity, "the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred." *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 331 (3d Cir. 2015). Here, WPAHS was already investigating Ms. Hileman for alleged misconduct before she engaged in any of the alleged protected activities. Ms. Hileman never disclosed to WPAHS that she had diabetes until after she was confronted with allegations of sleeping while working. The timing of these events, in relation Ms. Hileman's termination, is not unusually suggestive of any retaliatory motive, because the investigative process had already been initiated prior to WPAHS having any indication of Ms. Hileman's diabetes. As such, Ms. Hileman fails to establish a genuine issue of

7

material fact that a causal connection existed between her alleged protected activities and her termination.

### Legitimate Non-Discriminatory Reason and Pretext

Even if Ms. Hileman could establish a prima facie case for ADA discrimination or retaliation, which she fails to do, she also fails to establish a genuine issue of material fact that the legitimate non-retaliatory reason posited by WPAHS for firing her, that she was allegedly sleeping at work, was pretextual.

"An employer may act on a legitimate, nondiscriminatory reason even if it is 'wrong or mistaken.'" *Arana v. Temple Univ. Health Sys.*, 776 Fed. App'x 66, 70 (3d Cir. 2019) (affirming summary judgment and finding that an employer had established a legitimate, nondiscriminatory reason for terminating an employee because the employer reasonably believed that the employee was sleeping while working) (citing *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)). Courts "focus not on what actually happened, but on what the employer honestly believed." *Id.* If an employer establishes a legitimate non-discriminatory reason for their actions, then the burden of persuasion shifts back to the employee to establish pretext. To demonstrate pretext, a plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Fuentes*, 32 F.3d at 765 (internal quotations and citations omitted).

In this case, WPAHS proffers a legitimate non-discriminatory reason for terminating Ms. Hileman, that she was sleeping or positioning herself with the intent of sleeping while at work.

WPAHS' Standards of Conduct clearly indicates that "sleeping or positioning oneself with the obvious intent of sleeping" while on duty is possible grounds for termination. (ECF No. 51-1, at WPAHS_000161). WPAHS received an email from Ms. Ashbaugh, alleging that Ms. Hileman seemed to be sleeping at work. (*Id.* at WPAHS_000000234). After receiving the email, WPAHS investigated the allegations that Ms. Hileman was sleeping at work. Ms. Hileman testified that she "may have shut her eyes," because her eyes were dry due to her medication for diabetes. (ECF No. 51-2, at 156). Ms. Hileman further admits that she was told that she was fired for allegedly sleeping at work. (ECF No. 63, at ¶ 30). Ms. Hileman argues that there were many employees who slept while at work and who were not terminated, but she does not point to any record evidence to show that any of these other instances were reported to any supervisors, except for her own alleged misconduct. After review of the record, Ms. Hileman does not identify any other record evidence to show that WPAHS' proffered legitimate, non-discriminatory reason was pretextual. As such, Ms. Hileman fails to establish a genuine issue of material fact that WPAHS' legitimate, nondiscriminatory reason for terminating her was pretextual.

WPAHS' Motion for Summary Judgment, as to Ms. Hileman's discrimination and retaliation claims under the ADA and PHRA, at Counts I and III, of the Complaint, will be granted.

B. <u>Count II: Failure to Accommodate Claims</u>

Ms. Hileman brings ADA and PHRA failure to accommodate claims against WPAHS. (ECF No. 1, at ¶¶ 69-76). WPAHS argues that said claims fail, because insofar as Ms. Hileman never made a timely request for accommodation, she cannot establish a prima facie case for failure to accommodate under the relevant statutes. (ECF No. 49, at 12) Ms. Hileman argues that she

9

established a prima facie case for failure to accommodate and had informed WPAHS of her diabetes before she was terminated for the alleged misconduct. (ECF No. 58, at 22-23).

To establish a claim for failure to accommodate under the ADA, Ms. Hileman must show: (1) that she was disabled, and her employer knew about it; (2) she requested an accommodation or assistance; (3) her employer did not make a good faith effort to assist; and (4) she could have been reasonably accommodated. *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017). The Third Circuit has established that an employer cannot be held liable for failing to provide an accommodation that was never requested by an employee. *See LaGatta v. Pa. Cyber Charter Sch.*, 726 F.Supp.2d 578, 588-89 (W.D. Pa. 2010) (granting summary judgment as to plaintiff's failure to accommodate claim where the plaintiff's deposition testimony repeatedly made clear that she never requested an accommodation for her disability during her employment) (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999) ("Employers cannot assume employees are disabled and need accommodations.")). The EEOC's guidance related to the timing of a request for a reasonable accommodation explains:

> 10. What should an employer do if an employee mentions a disability and/or the need for an accommodation for the first time in response to counseling or discipline for unacceptable conduct?
>
> If an employee states that her disability is the cause of the conduct problem or requests accommodation, the employer may still discipline the employee for the misconduct. If the appropriate disciplinary action is termination, the ADA would not require further discussion about the employee's disability or request for reasonable accommodation…

*See Applying Performance and Conduct Standards to Employees with Disabilities,* EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, https://www.eeoc.gov/laws/guidance/applyingperformance-and-conduct-standards-employees-disabilities#conduct (Sept. 3, 2008).

The record evidence is clear that Ms. Hileman never informed WPAHS of her diabetes diagnosis until *after* she was confronted about allegedly sleeping while at work. Ms. Hileman testified that she never told Mr. Lust, or anyone at WPAHS, about her diabetes diagnosis prior to the July 13, 2022 meeting with Mr. Lust. (ECF 51-2, at 151) At her deposition, when Ms. Hileman was asked if she ever inquired into acquiring a reasonable accommodation for her diabetes, she testified that she asked if there was "anything [she] could do," after Mr. Lust informed her of her termination. (*Id.* at 160).

Even if the Court considered Ms. Hileman's statement as a request for a reasonable accommodation based upon her diabetes, it was made *after* she had already been reported for allegedly sleeping while at work. WPAHS had no obligation to accommodate her disability if they were not aware of it before her misconduct. *See Phillips v. Ctr. for Vision Loss*, No. 3:15-CV-00563, 2017 U.S. Dist. LEXIS 30186, at *46-48 (M.D. Pa. 2017) (finding that an email notice of plaintiff's desire for accommodations came "too little too late" when it was not sent until after the employer had decided to terminate her for poor performance because, "[t]his prospective accommodation request does not excuse Plaintiff's past misconduct."). As such, Ms. Hileman fails to establish a genuine issue material fact as to her failure to accommodate claim under the ADA and PHRA. Therefore, WPAHS' Motion for Summary Judgment, as to Ms. Hileman's failure to accommodate claims under the ADA and PHRA, at Count II of the Complaint, will be granted.

C. Count IV: FMLA Interference

At Count IV of the Complaint, Ms. Hileman brings a FMLA interference claim against WPAHS. (ECF No. 1, at ¶¶ 84-94). WPAHS argues that Ms. Hileman's FMLA interference

11

claim fails, because Ms. Hileman never provided WPAHS with the proper notice required under the statute. (ECF No. 49, at 16). Ms. Hileman argues that she disclosed her diabetes and the medication effects on her to WPAHS before she was disciplined. (ECF No. 58, at 22-23).

To establish a FMLA interference claim, Ms. Hileman must show "that [s]he was entitled to benefits under the FMLA and that [s]he was denied them." *Mascioli v. Arby's Rest. Grp.*, Inc., 610 F. Supp. 2d 419, 429 (W.D. Pa. 2009) (internal citations omitted). A plaintiff must establish that:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*Id.* at 429-430. (citing *Lombardo v. Air Prods. & Chems., Inc.,* 2006 WL 2547916, at *11 (E.D. Pa. 2006). Employees seeking FMLA qualified leave must provide adequate notice to their employers. 29 C.F.R. § 825.302. Formal written notice is not required, but it is well established that employers must be given some notice. *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401-02 (3d Cir. 2007). "[T]he critical test for substantively-sufficient notice is whether the information that the employee conveyed to the employer was reasonably adequate to apprise the employer of the employee's request to take leave for a serious health condition that rendered him unable to perform his job." *Id.* at 402 (citing *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 421 (6th Cir. 2004)). The question of notice is typically a question of fact, but it becomes a question of law where "no rational trier of fact could conclude that notice was adequate." *Sinico v. Cnty. of Lebanon*, 2022

WL 16552784, at *12 (M.D. Pa. 2022) (citing *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 303 n. 14 (3d Cir. 2012)).

In its Brief in Opposition, WPAHS argues that *Grosso v. UPMC*, 857 F. Supp. 2d 517 (W.D. Pa. 2012) is analogous to the case at hand. The Court agrees. In *Grosso*, a diabetic plaintiff asserted that prior episodes where she experienced hypoglycemic attacks and was unable to perform her duties or instances where she was sleeping on the job, in addition to the employer's awareness of her diabetes and an upcoming surgery, constituted notice that she was seeking leave under the FMLA. *Id.* at 541-542. The court in *Grosso* found that the plaintiff did not provide adequate notice under the FMLA, because the record contained no evidence that the plaintiff "ever mentioned leave to her supervisors and the circumstances do not show she indicated leave to them." *Id.* at 541.

Here, Ms. Hileman testified that she never mentioned or indicated to Mr. Lust that she needed any leave because of her diabetes or any side effects of her diabetes medication. (ECF No. 51-2, at 159-160). Ms. Hileman further testified that she never informed Mr. Lust that she had any issues performing her job duties because of her diabetes, nor that she needed any time off from work for any reason from after her July 13, 2022 meeting with Mr. Lust up until her notice of termination. (*Id.* at 159-161). As discussed above, Mr. Lust was not even aware of Ms. Hileman's diabetes until she was confronted about sleeping at work during the July 13, 2022 meeting. In short, there is no record evidence that shows Ms. Hileman ever expressed to Mr. Lust or anyone else at WPAHS that she had any intention of taking FMLA leave in a way that a reasonable jury could find that she provided WPAHS adequate notice under the statute.

As such, Ms. Hileman fails to establish a genuine issue of material fact that she provided proper notice to WPAHS under the FMLA. WPAHS' Motion for Summary Judgment, as to the FMLA interference claims against it, at Count IV of the Complaint, will be granted.

### D. Count V: WPCL Failure to Pay Wages Claim

At Count V of the Complaint, Ms. Hileman brings a claim against WPAHS for failure to pay wages under the WPCL. (ECF No. 1, at ¶¶ 44-58). In Ms. Hileman's Brief in Opposition, she concedes this claim. (ECF No. 58, at 33). As such, WPAHS' Motion for Summary Judgment, as to the WPCL claim against it at Count V of the Complaint, will be granted.

### IV. Conclusion

For the reasons discussed above, WPAHS' Motion for Summary Judgment will be granted in full.[2] Judgment will be entered in favor of the Defendant and against Plaintiff as to all claims and counts within the Complaint. A separate order to follow.

DATE: 2/11/2025

Marilyn J. Horan
United States District Judge

---

[2] Since the Court is granting WPAHS' Motion for Summary Judgment in full, there is no need to discuss the after-acquired evidence doctrine related to the available recovery for Ms. Hileman at this time.